IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEI WONG; DANA HINDMAN-ALLEN,                    Case No. 3:22-cv-01714-SB

              Plaintiffs,                    **FINDINGS AND**
**RECOMMENDATION**

        v.

SHEMIA FAGAN; DEBORAH SCROGGIN;
ALMA WHALEN; BOB ROBERTS;
SHERRY HALL; REBEKAH DOLL;
CLACKAMAS COUNTY CLERK'S
OFFICE; and THE OFFICE OF THE
SECRETARY OF THE STATE OF
OREGON,

              Defendants.

_____

**BECKERMAN, U.S. Magistrate Judge.**

      Plaintiffs Mei Wong ("Wong") and Dana Hindman-Allen ("Hindman-Allen") (together,

"Plaintiffs"), self-represented litigants, filed this lawsuit against the above-named state and

county officials and offices (together, "Defendants") under 42 U.S.C. §§ 1983 and 1985, Title

VII of the Civil Rights Act of 1964 ("Title VII" or the "Civil Rights Act"), and 18 U.S.C. §§ 241

and 242.[1] Defendants move, pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1) and

12(b)(6), to dismiss Plaintiffs' complaint for lack of subject matter jurisdiction and failure to

state a claim.

The parties have not consented to the jurisdiction of a magistrate judge under 28 U.S.C.

§ 636. For the reasons explained below, the Court recommends that the district judge grant

Defendants' motion to dismiss.

## BACKGROUND[2]

Plaintiff were candidates for public office during the State of Oregon's May 2022

primary election. (Compl. ¶¶ 2, 6-7, ECF No. 1.) Specifically, Wong ran as a candidate to

represent District 2 on the Metro Council ("Metro") and Hindman-Allen ran as a candidate to

serve as one of the Commissioners of Clackamas County, Oregon (the "County").[3] (*Id.*)

During the vote-counting process, Wong visited the Oregon Secretary of State's (the

"Secretary") and County's election websites and took screenshots of decreases in vote totals in

her Metro District 2 race. (*Id.* ¶ 16; *see also* Pls.' Exs. & Affs. Verification ("Pls.' Exs. & Affs.")

---

[1] The Court directs the Clerk of Court to amend the docket to reflect the correct spelling of Defendant Scroggin's first name.

[2] The Court briefly summarizes the relevant background, reserving its discussion of additional facts as they become pertinent to its analysis below. Court document citations herein refer to the CM/ECF-generated page numbers. *See generally Atkins v. Stivers*, No. 21-5798, 2021 WL 7084872, at *1 (6th Cir. Dec. 16, 2021) (explaining that "'CM/ECF' stands for Case Management/Electronic Case Files and is the federal judiciary's case management and electronic filing system").

[3] "Metro is a metropolitan service district established pursuant to [Oregon Revised Statutes] chapter 268 . . . that includes land in Clackamas, Multnomah, and Washington counties." *Hous. Land Advocs. v. Land Conservation & Dev. Comm'n*, 492 P.3d 765, 768 (Or. Ct. App. 2021) (quoting *Barkers Five, LLC v. Land Conservation & Dev. Comm'n*, 323 P.3d 368, 375-76 (Or. Ct. App. 2014)). Metro's responsibilities include "coordinating land use planning in th[is] tri-county region . . . [and] adopti[ng] . . . a regional [urban growth boundary]." *Id.* (simplified).

at 1-3, 7-12, 17, ECF No. 4, reflecting that all of the screenshots concern the vote totals in

Wong's race).[4] Wong's screenshots demonstrated that the unofficial tallies for Wong, Wong's

opponent, Christine Lewis ("Lewis"), write-in votes, and total votes varied and at times

decreased but Lewis always held at least 67.48% of the total votes cast in the Metro District 2

race:

- As of 4:36 a.m. on May 29, 2022, Lewis had received 31,489 votes (69.30%), Wong had received 13,757 votes (30.28%), there were 194 write-in votes (0.43%), and the total vote count was 45,440;

- As of 4:44 a.m. on May 29, 2022, Lewis had received 26,354 votes (67.48%), Wong had received 12,521 votes (32.06%), and there were 182 write-in votes (0.47%);

- As of 8:32 p.m. on May 29, 2022, Lewis had received 33,500 votes (69.81%), Wong had received 14,293 votes (29.78%), there were 195 write-in votes (0.40%), and the total vote count was 47,988;

- As of 8:36 p.m. on May 29, 2022, Lewis had received 30,436 votes (68.97%), Wong had received 13,502 votes (30.60%), and there were 189 write-in votes (0.43%);

- As of 5:44 a.m. on June 4, 2022, Lewis had received 42,070 votes (71.47%), Wong had received 16,561 votes (28.13%), and there were 235 write-in votes (0.40%); and

---

[4] As explained in Part II.A, the Court may consider Wong's screenshots at this stage of the proceedings, as Plaintiffs' complaint incorporates the screenshots by reference.

- As of 5:45 a.m. on June 4, 2022, Lewis had received 36,931 votes (70.37%), Wong had received 15,324 votes (29.20%), there were 223 write-in votes (0.42%), and the total vote count was 52,478.

(*See id.* at 7-12, reflecting that the second, fourth, and fifth screenshots cut off the portions listing the total vote counts and that unlike the other screenshots, the third screenshot was from the County's website).

In addition to the unofficial vote totals in Wong's race, Plaintiffs allege that there were three other "[i]rregularities and security violations" during the May 2022 primary election: (1) a "[m]isprint of over 60% of ballots in Clackamas County," (2) "[o]bservers in [the] Clackamas County Elections Office prior to office hours," and (3) "[m]anually inputting [of] wrong results from Clackamas County Elections Office to the Secretary of State's Elections website." (Compl. ¶ 17.)

Plaintiffs reported these issues to the Secretary's and County Clerk's offices and requested that they open an investigation and conduct a "risk limiting audit and/or full hand recount of the original ballots." (*Id.* ¶¶ 2, 11, 17, 21-22, 26-31, 29, 52.) Plaintiffs allege that the following state and County officials—all of whom Plaintiffs name as defendants (along with the Secretary's and County Clerk's offices) and sue in their official and individual capacities— denied their requests: (1) Shemia Fagan ("Fagan"), the Secretary, (2) Deborah Scroggin ("Scroggin"), Oregon's Elections Director, (3) Alma Whalen ("Whalen"), an Oregon election programs manager, (4) Bob Roberts ("Roberts"), an Oregon election investigations and legal specialist, (5) Sherry Hall ("Hall"), the County Clerk, and (6) Rebekah Doll ("Doll"), the County elections manager. (*Id.* ¶¶ 1-2, 6-15, 17, 21-22, 26-31.) Plaintiffs also allege that Defendants approved one candidate's request to open an investigation but did not do so "for other

candidates, one [of whom was] a minority candidate [i.e., Wong], resulting in discrimination."

(*Id.* ¶ 21.)

Based on these events, Plaintiffs filed this action against Defendants on November 4,

2022. Defendants' motion to dismiss for lack of subject matter jurisdiction and failure to state a

claim followed.

## DISCUSSION

## I. PRELIMINARY MATTERS

Before turning to Defendants' motion to dismiss, the Court addresses two preliminary

matters: the Court's conferral requirement and automatic substitution of certain official capacity

defendants.

### A. Conferral Requirement

It is not clear if Plaintiffs challenge the adequacy of conferral under Local Rule ("LR") 7-

1. (*See* Pls.' Resp. & Objs. Defs.' Mot. Dismiss ("Pls.' Resp.") at 5, ECF No. 16, discussing

Defendants' "last minute" offer to confer and that Plaintiffs agreed to the offer on "the 'special

condition' that [Defendant] first file a 'proper response' to . . . [the] complaint[,] which

would . . . bring relevant arguments and/or . . . defenses to the table worth discussion").

Defendants address the conferral requirement in their reply. (*See* Reply Supp. Defs.' Mot.

Dismiss ("Defs.' Reply") at 11-12, ECF No. 17, arguing that Defendants' motion complied with

LR 7-1(a) (citing Decl. Sarah Foreman Supp. Reply Defs.' Mot. Dismiss ("Foreman Decl.")

¶¶ 2-8, ECF No. 18)).

LR 7-1(a) provides, in relevant part, that "the first paragraph of every motion must

contain a certification regarding attempts to meet and confer; otherwise, the court may deny the

motion." *Ovitsky v. Oregon*, 594 F. App'x 431, 431 (9th Cir. 2015) (holding that the district

court did not abuse its discretion in denying a motion because it "failed to comply with local

rules," including the conferral rule) (citation omitted). Specifically, the first paragraph of a party's motion must certify, among other things, that "the parties made a good faith effort through personal or telephone conferences to resolve the dispute and have been unable to do so," or "[t]he opposing party willfully refused to confer." LR 7-1(a)(1)(A)-(B).

The first paragraph of Defendants' motion certified that their "counsel offered to confer by telephone conference with . . . Plaintiffs about the grounds for this motion, but they declined to confer before this motion was filed." (Defs.' Joint Mot. Dismiss ("Defs.' Mot.") at 4, ECF No. 13.) Plaintiffs dispute whether they "declined to confer," quote portions of the conferral correspondence attached to Defendants' counsel's declaration, and acknowledge that they conditioned conferral on the "special condition" that Defendants file a "proper response" (i.e., not a Rule 12(b) motion) and informed Defendants about their scheduling conflicts. (Pls.' Resp. at 5; *see also* Foreman Decl. Ex. 1 at 2-3, reflecting that after Defendants' counsel explained that conferral involves discussions about perceived deficiencies in claims and allegations and the potential to cure before Defendants filed a motion to dismiss, Plaintiffs reiterated that they accepted the "offer of conferment on the special condition that [Defendants] file a proper answer based upon facts and conclusions of law, according to the strict standards of the rules of evidence").

The Court finds that Defendants satisfied the conferral requirement under LR 7-1(a). Defendants were entitled to file a Rule 12(b) motion. *See* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1347 (3d ed. 2022) ("The purpose of Federal Rule 12(b) is to promote the expeditious and simultaneous presentation of defenses and objections. . . . [S]even enumerated defenses may be made by a single preliminary motion or by responsive pleading, whichever appears more advantageous to the party who wishes to assert the

defense or defenses."). Thus, to the extent Plaintiffs conditioned their willingness to confer on Defendants' filing of an answer or other responsive pleading, Plaintiffs effectively declined to confer, as Defendants stated in their motion.

For these reasons, the Court finds that Defendants satisfied LR 7-1(a)'s conferral requirement.

### B.    Automatic Substitution

In their reply, Defendants note that after Plaintiffs filed this lawsuit, Molly Woon ("Woon") succeeded Scroggin as Oregon's Elections Director, Catherine McMullen ("McMullen") succeeded Hall as the County Clerk, and Burke Jones ("Jones") succeeded Doll as the County Elections Manager. (Defs.' Reply at 1 n.1.) In addition, Fagan resigned from her position as Secretary on May 8, 2023,[5] and Oregon Governor Tina Kotek appointed LaVonne Griffin-Valade ("Griffin-Valade") to serve as Secretary effective on June 28, 2023.[6]

Rule 25(d) provides that "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending." FED. R. CIV. P. 25(d). Instead, "[t]he officer's successor is automatically substituted as a party." *Id.*

Plaintiffs name as defendants the following state and county election officials in their official and individual capacities: Scroggin, Hall, Doll, Fagan, Whalen, and Roberts. (Compl. ¶¶ 26-31.) To the extent Plaintiffs sue Scroggin, Hall, Doll, and Fagan in their official capacities, Woon, McMullen, Jones, and Griffin-Valade are automatically substituted as parties. *See Barnett*

---

[5] *See* SECRETARY OF STATE SHEMIA FAGAN ANNOUNCES RESIGNATION, EFFECTIVE MONDAY MAY 8 (May 2, 2023), https://perma.cc/Y67S-ZGN2.

[6] *See* GOVERNOR TINA KOTEK APPOINTS LAVONNE GRIFFIN-VALADE AS OREGON SECRETARY OF STATE (June 28, 2023), https://perma.cc/Z5TF-S9P9.

*v. Evans*, 384 F. App'x 679, 680 (9th Cir. 2010) (noting that Rule 25(d) provides for "automatic substitution [of] public officials sued in their official capacity if they die, resign, or cease to hold office while [an] action is pending," and explaining that "the district court was not required sua sponte to substitute a successor since [the officer] was sued in his individual, not his official, capacity").

Consequently, the Court substitutes Woon, McMullen, Jones, and Griffin-Valade for Scroggin, Hall, Doll, and Fagan as defendants in their official capacities, and this action continues against Scroggin, Hall, Doll, and Fagan solely in their individual capacities. *See Batistini v. Aquino*, 890 F.2d 535, 536 n.1 (1st Cir. 1989) ("During the pendency of the case, Jorge Aquino resigned his position and was replaced as Secretary of Commerce by Jorge Santiago. The action therefore continued against Aquino solely in his individual capacity, and Santiago was automatically substituted as a party in his official capacity as Secretary.").

## II.    SUBJECT MATTER JURISDICTION

### A.    Standard of Review and Matters Beyond the Pleading

Defendants do not address whether they intend to bring a facial or factual challenge to subject matter jurisdiction under Rule 12(b)(1). (*See* Defs.' Mot. at 5-23; Defs.' Reply at 5-17.) Typically, "when 'deciding standing at the pleading stage, and for purposes of ruling on a motion to dismiss for want of standing, . . . courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" *Mecinas v Hobbs*, 30 F.4th 890, 896-97 (9th Cir. 2022) (quoting *Desert Citizens Against Pollution v. Bisson*, 231 F.3d 1172, 1178 (9th Cir. 2000)). An exception to this "general rule" is "where the defendant brings a motion under Rule 12(b)(1) challenging subject matter jurisdiction as a factual—rather than facial—matter." *Id.* at 897 (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).

If the defendant brings a factual attack "by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* (quoting *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)). Ordinarily, "[a]t that point, the court may resolve any factual disputes concerning the existence of jurisdiction." *Id.* (citing *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)). If, however, "the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." *Id.* (quoting *Augustine*, 704 F.2d at 1077).

Here, in moving to dismiss under Rule 12(b)(1) (and Rule 12(b)(6), for that matter), Defendants do not rely on their own affidavits, but they do rely on matters beyond the allegations in Plaintiffs' complaint. For example, Defendants rely on the certified results from Plaintiffs' elections and a post-election audit-related directive that the Secretary issued on September 22, 2021 ("Directive 2021-2"). (*See* Defs.' Mot. at 6, 10-11, citing and directly or indirectly relying on these matters). Although certified election results are proper subjects of judicial notice, *see Davis v. KHNL/KGMB, LLC*, No. 14-cv-00483, 2015 WL 3448737, at *2 (D. Haw. May 28, 2015) (taking "judicial notice of the certified [state] election results from November 2014"), Defendants do not ask the Court to take judicial notice of the results and simply note that courts may take judicial notice of matters in the public record and need not accept as true matters that are properly subject to judicial notice.[7] (Defs.' Mot. at 9) (citations omitted).

---

[7] Nevertheless, in accordance with the authorities cited herein, the Court takes judicial notice of the results and dates of the certified election results in Wong and Hindman-Allen's races. *See* Multnomah Cnty. Election Dir., *Official Precinct Results – Metro* (June 9, 2022),

Defendants also rely on certain exhibits that Plaintiffs filed in support of their complaint and response to Defendants' motion. For example, after filing their complaint on November 4, 2022, Plaintiffs filed supporting exhibits and "affidavits of verification" on November 8, 2022. (*See* Pls.' Exs. & Affs. at 1-19) (all caps and bold omitted). These exhibits are copies of screenshots on which Plaintiffs rely and reference in their complaint. (*See* Pls.' Exs. & Affs. at 2-3, 7-12; *cf.* Compl. ¶¶ 16-17.) Plaintiffs' affidavits attest to and provide specific details about the primary allegations in their complaint, including the names of the state and County officials that responded to each of their election-related complaints and the dates and details of their correspondence. (*See* Pls.' Exs. & Affs. at 13-19; *see also* Compl. ¶¶ 2, 17, 21-23, 26-31.)

Plaintiffs also filed exhibits in support of their response to Defendants' motion. (*See* Pls.' Exs. Supp. Pls.' Resp. Defs.' Mot. Dismiss ("Pls.' Resp. Exs."), ECF Nos. 16-1 to 16-14.) Specifically, Plaintiffs filed (1) copies of text from several state statutes, including Oregon Revised Statutes ("ORS") §§ 246.120, 254.532, 258.016, and 258.161; (2) Associated Press ("AP") and *Willamette Week* articles discussing the County's past election issues; (3) Directive 2021-2; (4) results from the County's audit and hand recount of votes from the election at issue here; and (5) the relevant correspondence between the parties. (*See* Pls.' Resp. Exs. Schedule A at 2, ECF No. 16-1 at 2, describing Exhibits A through L located at ECF Nos. 16-2 to 16-14.)

In their motion papers, Defendants cite and rely on several of Plaintiffs' exhibits, as well as one of Plaintiffs' affidavits. (*See* Defs.' Mot. at 10; Defs.' Reply at 6-7, 10-11, citing and relying on Wong's affidavit, Plaintiffs' correspondence with Defendants, results from the

---

https://perma.cc/D6YY-2VQS (showing that Lewis won the Metro District 2 race after receiving 80.51% of the total votes and Wong was the runner-up with 19.30% of the votes); Clackamas Cnty. Off. Results, *May 17, 2022 Primary Election* (June 13, 2022), https://perma.cc/H3K5-WML6 (reflecting that in Hindman-Allen's County Commissioner race, Sonya Fisher received 47.93% of the votes, Ben West received 36.47% of the votes, and Hindman-Allen finished third with 13.37% of the votes).

PAGE 10 – FINDINGS AND RECOMMENDATION

County's hand recount, and directives from the Secretary, including Directive 2021-2; *see also* Compl. ¶¶ 2, 17-18, 21-22, relying on Directive 2021-2 and making allegations related to Plaintiffs' election complaints, recounts and audits, and the parties' "two months" of communications).

Even if Defendants are bringing only a facial challenge to subject matter jurisdiction, the Court may still consider certain materials, such as matters of judicial notice or documents incorporated by reference into the complaint. *See Hyatt v. Yee*, 871 F.3d 1067, 1071 n.15 (9th Cir. 2017) (noting that the "[d]efendants brought both a facial and a factual challenge to jurisdiction, but the [d]istrict [c]ourt decided only the facial challenge," and that although a "district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6)[,] . . . a court may take judicial notice of matters of public record") (simplified); *Carpenter v. OneWest Bank, FSB*, No. 12-cv-00895, 2012 WL 13012420, at *2 (C.D. Cal. Apr. 25, 2012) (explaining that even when deciding a facial attack on subject matter jurisdiction, i.e., an attack challenging whether the "allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction," a district court "can look beyond the complaint to consider documents that are proper subjects of judicial notice") (citations omitted); *PNC Equip. Fin., LLC v. Cal. Fairs Fin. Auth.*, No. 11-cv-06248, 2012 WL 12506870, at *6 n.29 (C.D. Cal. Feb. 9, 2012) (same); *see also Boquist v. Courtney*, 32 F.4th 764, 772 (9th Cir. 2022) (explaining that even when it must accept allegations as true, "a court may consider . . . documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice" (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003))). The Court may also take judicial notice on its own. *See* FED. R. EVID. 201(c)(1) ("The court . . . may take judicial notice on its own.").

Consistent with this understanding, the Court notes that there is no dispute that the Court may consider the screenshots that Plaintiffs incorporated into their complaint by reference. *See Walker v. Fred Meyer, Inc.*, 953 F.3d 1082, 1085 n.1 (9th Cir. 2020) ("[T]he text of [the employment disclosure] may be considered at the motion-to-dismiss stage under the incorporation-by-reference doctrine, because, although [the plaintiff] did not attach the document to his pleadings, he referenced it throughout his complaint."). Nor is there is a dispute that the Court may consider Plaintiffs' affidavits, which simply attest to and provide specific details about their claims. (*See* Defs.' Reply at 7, citing and relying on Wong's affidavit); *see also Patrick v. Cnty. of L.A.*, No. 2:22-cv-02846, 2022 WL 17218070, at *7 n.2 (C.D. Cal. Aug. 29, 2022) (allowing the self-represented plaintiff's separately filed exhibits, but noting that "[a]nything filed separately from [an] amended complaint [would] not be considered as part of the amended complaint"). Accordingly, the Court may consider Plaintiffs' screenshots and affidavits.

With respect to the Plaintiffs' response exhibits, courts may take judicial notice of statutes. *See United States v. Lopez*, 4 F.4th 706, 731 (9th Cir. 2021) ("Federal courts may take judicial notice of matters of public record, including statutes."). The Court, however, declines to do so here because it may cite state statutes without taking judicial notice. *See Vaghashia v. City of L.A.*, No. 20-cv-03257, 2021 WL 6102469, at *1 (C.D. Cal. Aug. 20, 2021) (denying the "remainder of [a defendant's judicial notice] request as moot because [a district court] need not take judicial notice of state statutes in order to consider them"); *see also Rendon v. Infinity Fasteners, Inc.*, No. 1:20-cv-01538, 2022 WL 17634480, at *2 n.5 (E.D. Cal. Dec. 13, 2022) (noting that a party's request for judicial notice concerned, among other things, "statutes that would not require judicial notice as they are publicly available") (citation omitted).

As with Plaintiffs' screenshots and affidavits, there is no dispute that the Court may consider Plaintiffs' correspondence with Defendants and results from the County's post-election recount and audit, all of which are either referenced in the complaint or matters of public record. (*See* Defs.' Mot. at 10; Defs.' Reply at 6-7, 10-11, citing and relying on Plaintiffs' correspondence with Defendants, results from the County's hand recount, and directives from the Secretary, including Directive 2021-2; Compl. ¶¶ 2, 17-18, 21-22, relying on Directive 2021-2 and making allegations related to Plaintiffs' election complaints, recounts and audits, and the parties' "two months" of communications). No party questions the authenticity of these documents, nor the Secretary's other directive that Defendants cite (i.e., "Directive 2022-05").[8] *See Walker*, 953 F.3d at 1085 n.1 (observing that "a court may 'take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading'" (quoting *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005))). Accordingly, the Court may consider these matters in evaluating Defendants' motion.

Finally, as to the newspaper articles, it is well settled that courts may take judicial notice of facts from such articles. *See, e.g., Miller v. Sawant*, 18 F.4th 328, 335-36 & n.5 (9th Cir. 2021) (taking "judicial notice of six newspaper articles . . . identifying [the] [p]laintiffs as the officers involved in the [relevant] shooting"). Plaintiffs' complaint does not refer to or rely on the AP or *Willamette Week* articles, but does reference and make allegations related to some of the County election issues discussed therein (i.e., misprinted ballots and observers in the County elections office). (*See* Compl. ¶ 17; Pls.' Resp. Exs. K & L, ECF Nos. 16-13 and 16-14.) These

---

[8] *See* Off. Or. Sec'y State Elections Div., *Post-Election Audits* (Sept. 22, 2021), https://perma.cc/97ZC-KZNQ; Off. Or. Sec'y State Elections Div., *2022 Primary Election Clackamas County Additional Hand Recounts* (June 9, 2022), https://perma.cc/2NKN-4R2L.

PAGE 13 – FINDINGS AND RECOMMENDATION

issues, however, are discussed in Plaintiffs' complaint, the parties' correspondence, and the Secretary's public directives. Accordingly, the Court need not take judicial notice of any facts from these articles.

**B.    Analysis**

Defendants move, pursuant to Rule 12(b)(1), to dismiss Plaintiffs' complaint for lack of subject matter jurisdiction. (Defs.' Mot. at 5.) The Court concludes that it has subject matter jurisdiction.

**1.    Article III's Standing Requirements**

"The question of whether a party has standing to sue under Article III is a threshold issue that must be addressed before turning to the merits of a case." *Shulman v. Kaplan*, 58 F.4th 404, 407 (9th Cir. 2023) (citing *Horne v. Flores*, 557 U.S. 433, 445 (2009)). As the parties "'invoking federal jurisdiction,' [Plaintiffs] have the burden of establishing standing pursuant to Article III." *Id.* at 408 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). Thus, Plaintiffs "must show (1) that they 'suffered an injury in fact that is concrete, particularized, and actual or imminent'; (2) 'that the injury was likely caused by the defendants;' and (3) 'that the injury would likely be redressed by judicial relief.'" *Id.* (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021)). Defendants argue that there are two reasons why the Court lacks Article III standing and must therefore dismiss the complaint under Rule 12(b)(1): (1) "Plaintiffs do not allege a particularized injury-in-fact," and (2) "Plaintiffs' alleged injury is not redressable." (Defs.' Mot. at 5.)

///

///

///

///

### 2.    Plaintiffs' Claims

Plaintiffs bring claims under 42 U.S.C. §§ 1983, 1985, and "1964," Title VII of the Civil Rights Act, and 18 U.S.C. §§ 241 and 242, and for declaratory and injunctive relief.[9] (*See* Compl. ¶¶ 1, 32-61.) Specifically, in asserting claims under 42 U.S.C. § 1983, Plaintiffs allege that Defendants violated the First Amendment, as well as the Equal Protection and Due Process Clauses of the Fourteenth Amendment, in the course of denying their request for an investigation, risk-limiting audit, and full hand recount before certifying the results of the May 2022 primary election. (*Id.* ¶¶ 1, 16-24, 32-61.) In addition, Plaintiffs allege that Defendants conspired to interfere with their First and Fourteenth Amendment rights in violation of 42 U.S.C. § 1985. (*Id.*)

///

///

_____

[9] The Court notes that 18 U.S.C. §§ 241 and 242 provide no basis for civil liability but Plaintiffs have also appropriately styled their pleading as a civil rights complaint under 42 U.S.C. § 1983. *See Taylor for N.F. v. Dep't of Juv. Youth & Fam. Servs.*, No. 21-36030, 2023 WL 2584122, at *1 (9th Cir. Mar. 21, 2023) (noting that the Ninth Circuit has held that "18 U.S.C. §§ 241, 242 'provide no basis for civil liability'" (quoting *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980))); *see also Ray v. Lara*, 31 F.4th 692, 698 n.5 (9th Cir. 2022) ("Although [the self-represented plaintiff's] complaint asserted criminal claims under 18 U.S.C. §§ 241 and 242, the district court construed the complaint as a civil rights complaint under § 1983."). With respect to the Civil Rights Act, the Court notes that "Title VII prohibits discrimination in employment" and "Title I bars the unequal application of voter registration requirements," *Celece v. Dunn Sch.*, No. 20-cv-10139, 2020 WL 6802027, at *8 (C.D. Cal. Nov. 19, 2020) (citation omitted), but Plaintiffs make no allegations pertaining to employment or voter registration requirements. Furthermore, the Ninth Amendment, which Plaintiffs cite in their complaint, "has not been interpreted as independently securing any constitutional rights for purposes of making out a constitutional violation." *Waine v. Warner*, No. 12-cv-01613-BR, 2013 WL 4501028, at *6 (D. Or. Aug. 21, 2013) (quoting *Schowengerdt v. United States*, 944 F.2d 483, 490 (9th Cir. 1991) and citing *Standberg v. City of Helena*, 791 F.2d 744, 748-49 (9th Cir. 1986)). Finally, "respondeat superior . . . is a theory of liability, not a claim," *Henry v. Atoch*, No. 11-cv-05740, 2012 WL 1021979, at *1 (W.D. Wash. Mar. 26, 2012), and contrary to Plaintiffs' complaint (*see* Compl. ¶¶ 1, 3), there is no statute numbered "42 U.S.C. § 1964." *See Evans v. All. Funding*, No. 10-cv-03200, 2010 WL 11482495, at *3 n.32 (C.D. Cal. Dec. 13, 2010) ("Evans appears to refer to the Civil Rights Acts of 1964 and 1968, as there are no statutes numbered 42 U.S.C. §§ 1964 or 1968.").

### 3.     Disposition

Defendants argue that Plaintiffs' "complaint should be dismissed for lack of jurisdiction," because they cannot satisfy the injury in fact and redressability requirements. (Defs.' Mot. at 9.) The Court disagrees.

### a.     Injury in Fact

Defendants argue that Plaintiffs do not sufficiently allege an injury in fact. (Defs.' Mot. at 10.) Defendants assert that "[t]he only harm that Plaintiffs allege is that their request for a risk-limiting audit was denied." (*Id.*) Defendants emphasize that (1) Plaintiffs do not allege that "any votes in their favor were compromised because of technical errors," the "wrong candidate was declared the winner," that "errors rendered the election results as uncertain," or that a risk-limiting audit and full hand recount "would change the outcome of their race," (2) the Secretary directed the County to "conduct an additional hand count in response to the very issue that Plaintiffs assert in the [c]omplaint[, i.e.,] misprinted ballots that . . . were not machine-readable," (3) "Hindman-Allen's race was . . . randomly selected for a hand recount," and (4) under ORS § 254.529(1), "county clerks have a *choice* of . . . either a hand count of ballots which is compared to vote tally system results, or a risk-limiting audit." (*Id.* at 10-11, citing Directive 2022-05.)

Defendants' arguments are unpersuasive. In asserting claims under §§ 1983 and 1985, Plaintiffs allege that Defendants injured them by violating, and conspiring to violate, their rights under the First and Fourteenth Amendments, including their right to equal protection. (*See* Compl. at 1; *id.* ¶¶ 2, 16-35.) Plaintiffs allege that Defendants did so in the course of denying their requests to open an investigation about election irregularities and security violations, and approving one candidate's request but declining to do so for others, including Wong, a minority candidate. (*Id.*) Notably, in addressing Plaintiffs' Article III standing, Defendants do not address

PAGE 16 – FINDINGS AND RECOMMENDATION

the discrimination, equal protection, or conspiracy-based §§ 1983 and 1985 claims. (*See* Defs.'
Mot. at 9-16.) Instead, Defendants challenge only the sufficiency of those claims under Rule
12(b)(6). (*See id.* at 17-18.)

      As the authorities cited herein demonstrate, Plaintiffs' claims, such as their
discrimination, equal protection, and conspiracy-based §§ 1983 and 1985 claims, need not be
meritorious to establish subject matter jurisdiction.[10] *See Poore v. Simpson Paper Co.*, 566 F.3d
922, 927 (9th Cir. 2009) ("Although the claim may fail on the merits, it need not be meritorious
to establish subject-matter jurisdiction. It need only be non-frivolous."); *Norkunas v. Wynn Las
Vegas, LLC*, 343 F. App'x 269, 270 (9th Cir. 2009) (observing that "a court's 'jurisdiction' is not
defeated by the weakness of the merits of the claim unless the claim is 'wholly insubstantial and
frivolous,' which is a separate inquiry from Article III standing") (citation omitted). That is true
even if the complaint suggests that there may be prudential limitations to some of Hindman-
Allen's claims. *See McCollum v. Cal. Dep't Corr. & Rehab.*, 647 F.3d 870, 878 & n.6 (9th Cir.
2011) (noting that courts "typically decline to hear cases asserting rights properly belonging to
third parties rather than the plaintiff," but explaining that the court could "assume Article III
standing without 'violat[ing] the rule that a federal court may not hypothesize subject-matter
jurisdiction for the purpose of deciding the merits,' because [the court upheld] dismissal of [the
relevant] claims not on the underlying merits but instead based on third party prudential
standing, a 'non-merits ground[]'" (quoting *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1042
n.2 (9th Cir.1999))); *see also Potter v. Cozen & O'Connor*, 46 F.4th 148, 155-56 (3d Cir. 2022)
(collecting cases, finding that Supreme Court precedent supported the court's holding that the

---

      [10] Defendants do not argue that any of Plaintiffs' claims are frivolous.

"third-party standing doctrine is not jurisdictional," and noting that prudential standing may be waived).

For these reasons, the Court concludes that Plaintiffs' alleged discrimination and equal protection claims are sufficiently particularized and concrete to plead an injury in fact.

### b.    Redressability

Defendants separately argue that Plaintiffs' claims for damages and injunctive and declaratory relief do not satisfy the redressability requirement. (Defs.' Mot. at 11-16.) The Court disagrees.

### 1)    Damages

With respect to Plaintiffs' claims for damages, Defendants argue that Plaintiffs' alleged injuries are not redressable because they cannot recover damages. (*Id.* at 11, 14-16.) In support, Defendants argue that individual state officials sued in their personal capacity are entitled to qualified immunity, and state officials sued in their official capacity are entitled to Eleventh Amendment immunity. (*Id.* at 14-16.) However, these are defenses to the merits of Plaintiffs' claims and are not relevant to whether this Court has subject matter jurisdiction. *See Nevada v. Hicks*, 533 U.S. 353, 373 (2001) ("There is no authority whatever for the proposition that absolute- and qualified-immunity defenses pertain to the court's jurisdiction[.]"); *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) ("[T]he threshold question of whether plaintiff has standing (and the court has jurisdiction) is distinct from the merits of his claim. Rather, '[t]he jurisdictional question of standing precedes, and does not require, analysis of the merits.'") (citations omitted); *Williams v. County*, No. 2:15-cv-01760-SU, 2016 WL 4745179, at *3-4 (D. Or. Sept. 12, 2016) (declining to "consider qualified immunity as part of a Rule 12(b)(1) motion to dismiss," determining that "[t]he proper vehicle for [the] defendants to assert qualified immunity . . . is a Rule 12(b)(6) motion to dismiss or, if appropriate, a motion for summary

judgment," and noting that the defendants and court could not respectively find persuasive or controlling legal authority "allow[ing] for a Rule 12(b)(1) dismissal on qualified immunity grounds"). Therefore, the Court does not evaluate Defendants' proffered immunity defenses to determine redressability under Rule 12(b)(1).

### 2)    Declaratory and Injunctive Relief

With respect to Plaintiffs' claims for declaratory and injunctive relief, Defendants argue that "Plaintiffs cannot obtain declaratory or injunctive relief because they cannot show that the same issues from the May 2022 election are likely to reoccur." (Defs.' Mot. at 11) (bold omitted). Defendants in turn argue that Plaintiffs' claims for declaratory and injunctive relief are "moot." (*Id.* at 11-14.)

"In seeking to have a [plaintiff's] case [or claims] dismissed as moot[,] . . . the defendant's burden is a heavy one." *Nat. Res. Def.'s Council Cnty. of L.A.*, 840 F.3d 1098, 1101 (9th Cir. 2016) (quoting *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 66 (1987)). "The defendant must demonstrate that it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (quoting *Gwaltney*, 484 U.S. at 66).

A defendant "may do so by persuading the court that 'the change in its behavior is entrenched or permanent,'" *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1152 (9th Cir. 2019) (quoting *Fikre v. FBI*, 904 F.3d 1033, 1037 (9th Cir. 2018)), and thus there remains no effective or possible relief a court can provide. *See Bayern v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 862 (9th Cir. 2017) ("The party asserting mootness bears the heavy burden of establishing that there remains no effective relief a court can provide."); *Johnson v. Baker*, 23 F.4th 1209, 1214 n.2 (9th Cir. 2022) (noting that a claim for injunctive relief is "moot only if it is impossible for [the] court to grant relief") (simplified).

PAGE 19 – FINDINGS AND RECOMMENDATION

Defendants have not met their heavy burden of demonstrating that there remains no effective or possible relief the Court could conceivably provide here. Defendants' position is premised on their assertions that Plaintiffs "have not alleged that they are again running for office," and "do not allege facts to show that the actions that form the basis of their complaint will occur in the future." (Defs.' Mot. at 9.) Defendants also note that Plaintiffs "concede that they are not [planning to run again] for office in [the] County but 'that does not mean that they will not run in the future.'" (Defs.' Reply at 4, quoting Pls.' Resp. at 18.)

Plaintiffs' claims are based on Defendants' alleged discrimination, denial of equal protection, and conspiracy to violate their rights, and in part on Wong's status as a minority candidate. Defendants' mootness arguments fail adequately to address all of Plaintiffs' allegations, including those pertaining to alleged discrimination of a minority candidate. In their response, Plaintiffs do not rule out their participation in future races. (*See* Pls.' Resp. at 18, "If Plaintiff(s) ran for office again, will we be assured this action will not happen again? Plaintiff(s) are not alleging that they are running for office in [the] County, yet that does not mean they will not in the future."). In any event, there remains the possibility that if Plaintiffs' allegations about discrimination against minority candidates were meritorious, the alleged wrongful behavior could reoccur against minority candidates in future elections.

In summary, Defendants have not carried their heavy burden of demonstrating that Plaintiffs' claims for declaratory and injunctive relief are moot, and therefore the Court finds that those claims satisfy the redressability requirement.

### 3)    Conclusion

For these reasons, the Court concludes that Plaintiffs satisfy the redressability requirement, and Plaintiffs have Article III standing to bring their claims in federal court.

///

III.    **FAILURE TO STATE A CLAIM**

Defendants also move, pursuant to Rule 12(b)(6), to dismiss Plaintiffs' complaint for failure to state a claim upon which relief can be granted. As explained below, the Court agrees and therefore recommends that the district judge grant Defendants' motion to dismiss.

A.    **Legal Standard**

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (simplified).

B.    **Analysis**

1.    **Ninth Amendment and "42 U.S.C. § 1964"**

Plaintiffs premise their claims on alleged violations of the Ninth Amendment and "42 U.S.C. § 1964." (*See* Compl. ¶¶ 1, 3, 23, 32, 34, 36, 38, 40, 46, 48, 54, 60, relying on the Ninth Amendment and "42 U.S.C. § 1964," and incorporating such reliance into each claim by reference). The Ninth Amendment, however, "has not been interpreted as independently securing any constitutional rights for purposes of making out a constitutional violation." *Waine*, 2013 WL 4501028, at *6 (quoting *Schowengerdt*, 944 F.2d at 490 and citing *Standberg*, 791 F.2d at 748-49). Furthermore, courts have recognized that there is no statute numbered "42 U.S.C. § 1964." *See Evans*, 2010 WL 11482495, at *3 n.32 ("Evans appears to refer to the Civil Rights Acts of

1964 and 1968, as there are no statutes numbered 42 U.S.C. §§ 1964 or 1968."). Accordingly, the Court recommends that the district judge dismiss Plaintiffs' claims, with prejudice, to the extent they are based on violations of the Ninth Amendment or "42 U.S.C. § 1964." *See Waine, 2013 WL 4501028, at \*6* (granting a motion to dismiss a Ninth Amendment claim with prejudice).

### 2.    Criminal Statutes (Count One)

Plaintiffs assert claims under 18 U.S.C. §§ 241 and 242. (Compl. at 12.) These federal criminal statutes provide no basis for civil liability. *See Taylor, 2023 WL 2584122, at \*1* (noting that the Ninth Circuit has held that "§§ 241, 242 provide no basis for civil liability") (simplified). The Court therefore recommends that the district judge dismiss Plaintiffs' claims under 18 U.S.C. §§ 241 and 242 with prejudice. *See Scheidler v. Avery, 599 F. App'x 688, 689-90 (9th Cir. 2015)* (reviewing the district court's dismissal under Rule 12(b)(6), recognizing that "§§ 241 and 242 provide no basis for civil liability," and stating that "the district court properly determined that [the plaintiff was] not entitled to relief under the federal criminal statutes he cited") (citations omitted).

### 3.    Section 1985 Claim (Count Two)

Plaintiffs bring a conspiracy claim against Fagan, Scroggin, Whalen, Roberts, Hall, and Doll under § 1985. (Compl. at 12.) Plaintiffs allege that these defendants conspired to violate, and interfere with the exercise of, their constitutional rights. (*Id.* at 1, 12.)

Plaintiffs fail to state a conspiracy claim under § 1985. To state such a claim, Plaintiffs must allege facts that plausibly suggest that two more or persons, one of whom must be a state actor, *see Pasadena Republican Club v. W. Just. Ctr., 985 F.3d 1161, 1171 (9th Cir. 2021),* "shared a goal" of violating, or reached an agreement to violate, their constitutional rights. *See O'Handley v. Weber, 62 F.4th 1145, 1162-63 (9th Cir. 2023)* (affirming the district court's

PAGE 22 – FINDINGS AND RECOMMENDATION

dismissal of conspiracy claims against the California Secretary of State under Rule 12(b)(6), noting "there is no unconstitutional conspiracy without this shared specific intent," and explaining that the plaintiff's claim was "fatal[ly] flaw[ed]" because he did not allege that the California Secretary of State and a private entity "shared a goal of violating his or anyone else's constitutional rights"); *see also Ogunsalu v. Sweetwater Union High Sch. Dist.*, 745 F. App'x 757, 758 (9th Cir. 2018) (affirming the district court's dismissal of claim that the defendants conspired to deprive him of his constitutional rights, noting that a conspiracy under § 1985(3) requires that the defendants reach an agreement with one another, and holding that the district court did not abuse its discretion to deny leave to amend because it previously explained the complaint's shortcomings and it was "absolutely clear" that the plaintiff could not cure the deficiencies).

Plaintiffs' complaint includes only conclusory references to a "conspiracy" and is devoid of any facts that plausibly suggest that any of the defendants ever reached an agreement or shared a goal of violating Plaintiffs' constitutional rights, or ever took actions based on anyone's protected status. Indeed, the relevant correspondence between the parties, which Plaintiffs filed and incorporated by reference into their complaint, reflects that Roberts sent letters to Wong and Hindman-Allen explaining that the state elections division declined their requests to "open a separate investigation" related to any unauthorized observers in the County's elections office because they "already opened an investigation into th[at] matter." (Pls.' Resp. Exs. H at 5 & I at 6.)

Roberts also explained to Plaintiffs that the Secretary issued a directive (i.e., Directive 2022-05) pertaining to the misprinted ballots in the County. (*Id.*) Specifically, in Directive 2022-05, the Secretary explained that "[a] majority of the [May 2022 primary election] ballots were

misprinted, resulting in barcodes that tally machines could not read." Off. Or. Sec'y State Elections Div., *2022 Primary Election Clackamas County Additional Hand Recounts* (June 9, 2022), https://perma.cc/FNV5-75XT. After recognizing that "to certify results on time, the County required hundreds of additional staff, an emergency response from the county government, added security measures, several revisions to the security plan, and increased oversight by the Secretary of State's Office," and the need "[t]o verify the accuracy and uniformity under the[] circumstances," the Secretary ordered the County to "conduct additional hand recounts as outlined in th[e] directive and attached instructions[.]" *Id.*; (*see also* Pls.' Resp. Exs. H at 1 & I at 1-2; Pls.' Affs. & Exs. at 13, 17, reflecting that Wong and Hindman-Allen respectively submitted their complaints shortly before and after the Secretary issued Directive 2022-05).

As Plaintiffs' response exhibits demonstrate, the County followed the Secretary's directive and conducted the requested hand recount, Hindman-Allen's race was among the races that were randomly selected for a hand recount, and the hand recount did not have any impact on the result in Hindman-Allen's race. (*See* Pls.' Resp. Exs. F & G; *id.* Ex. G at 3-4.) Plaintiffs' response exhibits also demonstrate that Defendants explained that Wong's screenshots of varying and at times decreasing totals in her Metro District 2 race did not amount to an election law violation, and noted that "the time period claimed . . . [were] not official results," results are not official until the election is certified, and the County "completed the administrative hand count and secondary hand count which verified [its] system was working properly." (*Id.* Ex. H at 5, 12, 17; *id.* Ex. I at 6.)Defendants also explained that candidates may file a recount demand

under state law, but the deadline had passed and was required to be accompanied by a deposit.[11] (*See* Ex. H at 13, 17, demonstrating that Hall explained as much in a response letter to Wong dated July 22, 2022).

Although Wong disputed whether she timely made such a demand, Wong never claimed that she submitted the necessary deposit along with any recount demand and instead belatedly expressed her desire to have the County "cover[] or greatly reduce[]" her costs. (*See id.* Ex. H at 9, 15.)

As in *O'Handley*, Plaintiffs' conspiracy claim is fatally flawed because they fail to allege facts, and do not appear able to allege facts, that plausibly suggest that any of the defendants shared a goal or reached an agreement to violate their or anyone else's constitutional rights. *See* 62 F.4th at 1161-63 & n.4 (dismissing for similar reasons and declining to reach other issues given the plaintiff's failure plausibly to allege "a meeting of the minds to violate any constitutional right"). The Court also notes that Plaintiffs' conspiracy claim is based on the same allegations as their § 1983 claims, which, as explained below, fail to state plausible claims for relief. For these reasons, the Court recommends that the district judge dismiss with prejudice Plaintiffs' conspiracy claim. *See Caldeira v. Cnty. of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989) ("[T]he absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations."); *see also Andrade v. Cho*, No. 21-16051, 2022 WL 12325356, at *1 (9th Cir. Oct. 21, 2022) ("Neither a municipality nor a supervisor . . . can be

---

[11] "A candidate . . . may file a demand requiring the Secretary of State to direct that a recount be made in specified precincts in which votes were cast for the nomination or office for which the candidate received a vote. . . . [E]ach demand [must] be accompanied by a cash deposit of $15 for each precinct to be recounted up to a maximum of $8,000 for a recount of all precincts in the state on a measure or for a nomination or office. . . . [T]he first demand [must] be filed in the office of the Secretary of State not later than the 42nd day and a supplemental demand not later than the 52nd day after the date of the election in which votes were cast for the nomination, office or measure." OR. REV. STAT. § 258.161(1)-(9).

held liable under § 1983 where no injury or constitutional violation has occurred.") (citation omitted).

### 4. Section 1983 Claims (Counts Three, Five, and Seven)

Plaintiffs assert section 1983 claims against Fagan, Scroggin, Whalen, Roberts, Hall, and Doll (Count Three), the County's election office (Count Five), and the Secretary's office (Count Seven). (Compl. at 13-14.)

### a. Counts Three and Seven

To the extent Plaintiffs sue Fagan, Whalen, Roberts, and Woon in their official capacities or the Secretary's office or a division of the Secretary's office (*see* Compl. at 6-7, 13-15, asserting § 1983 claims against these public officials in their official capacities and the Secretary's elections office), Plaintiffs' claims are against the state itself. Thus, the Court recommends that the district judge dismiss with prejudice counts three and seven against the official capacity state defendants and Secretary's elections office because the state is immune from suit. *See Easton v. Kyes*, 816 F. App'x 178, 178-79 (9th Cir. 2020) (explaining that "Congress did not abrogate state sovereign immunity in enacting § 1983" and "[a] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [, which is ] no different from a suit against the State itself," and affirming the district court's Rule 12(b)(6) dismissal, with prejudice, of section 1983 claims against state departments and an official capacity defendant (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 71 (1989))); *see also Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147, 1153-54 (9th Cir. 2018) (explaining that the Eleventh Amendment barred the plaintiff's claim and thus "the district court should have dismissed it with prejudice"); *see also Buffin v. California*, 23 F.4th 951, 963 (9th Cir. 2022) ("[T]he Sheriff [for the City and County] could possess that immunity only if she was being sued in her official capacity as a state

official. . . . [O]nly a state, its arms and instrumentalities, and its officials (when sued in their official capacities) enjoy that kind of immunity; the county does not.").

To the extent Plaintiffs bring section 1983 claims against Fagan, Scroggin, Whalen, and Roberts in their individual capacities, Plaintiffs fail to state a claim upon which relief can be granted. *See id.* at 179 (affirming the dismissal of the plaintiff's section 1983 claim against the state official in his "individual capacity" because the plaintiff "failed to allege facts sufficient to state a plausible claim").

Plaintiffs suggest that the individual capacity state defendants discriminated against them and violated their rights to equal protection. (*See* Compl. at 1, 11.) Plaintiffs' claims appear to be based only on Plaintiffs' allegations regarding Wong being a minority candidate, as Plaintiffs' complaint does not identify any other potentially protected status. Plaintiffs' allegations, however, are implausible. They allege only that Defendants approved a request to open an investigation "for one candidate" but declined to do so "for other candidates, one [of whom was] a minority candidate [i.e., Wong], resulting in discrimination." (*Id.* at 11.) Far more is required to state plausible discrimination or equal protection claims, and the record before the Court suggests that Plaintiffs lack a good faith basis to allege such a claim given Defendants' reasons for declining to open an investigation based on Plaintiffs' complaints. *See Howe v. Cnty. of Mendocino*, No. 21-16665, 2022 WL 3952395, at *2 (9th Cir. Aug. 31, 2022) ("To state a § 1983 claim for violation of the Equal Protection Clause, '[Plaintiffs] must show that [Defendants] acted with an intent or purpose to discriminate against [Plaintiffs] based upon membership in a protected class. . . . The complaint contains numerous conclusory allegations of discriminatory intent by Defendants against Plaintiffs, but it fails to plead sufficient facts in support of such allegations. These conclusory allegations do not suffice to state an equal protection claim.")

(simplified); *O'Handley*, 62 F.4th at 1164 ("[Plaintiff] has not alleged facts plausibly supporting

his speculation of political bias. He does not name any other conservative commentators whose

speech the [California Office of Elections Cybersecurity ('OEC')] allegedly targeted or identify

any 'self-identified political liberals' whose false or misleading tweets the OEC allegedly

declined to flag. A cursory assertion of differential treatment unsupported by factual allegations

is insufficient to state a claim for relief.") (citation omitted).

Plaintiffs also allege that Defendants violated their due process rights. (*See* Compl. at 1,

11.) However, because Plaintiffs fail to identify what process was allegedly due and not

provided, they fail to plead facts sufficient to state a due process claim. *See Howe*, 2022 WL

3952395, at *2 ("Plaintiffs fail to plead sufficient facts to state a due process claim because they

fail to identify what process was allegedly due and not provided."). Plaintiffs' filings suggest that

Defendants adequately addressed most of Plaintiffs' complaints (i.e., unauthorized observers,

misprinted ballots, and recounts and audits), and provided reasonable justifications for declining

to take further action with respect to Plaintiffs' other complaints (i.e., Wong's screenshots of

unofficial online votes tallies and Wong's failure to meet the requirements for a candidate-

demanded recount).

It is not clear what further process was due to Plaintiffs, or how Plaintiffs could plausibly

allege a deprivation of life, liberty, or property. *See id.* ("A procedural due process claim hinges

on proof of two elements: (1) a protectible liberty or property interest . . . ; and (2) a denial of

adequate procedural protections.") (simplified); *see also Heidt v. City of McMinnville*, No. 15-

989-SI, 2015 WL 9484484, at *7 (D. Or. Dec. 29, 2015) ("To establish a substantive due process

claim, a plaintiff must, as a threshold matter, show a government deprivation of life, liberty, or

property." (quoting *Nunez v. City of L.A.*, 147 F.3d 867, 971 (9th Cir. 1998))).

As such, Plaintiffs' complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory to state a due process claim." *Howe*, 2022 WL 3952395, at *2 (simplified). Accordingly, the Court recommends that the district judge dismiss Plaintiffs' due process claim with prejudice.

Finally, Plaintiffs allege that Defendants violated their First Amendment rights in unspecified ways. (Compl. at 6-7, 11.) It is not clear if Plaintiffs are attempting to proceed on the theory that Defendants' response to their complaints abridged their freedom of speech, or that Defendants engaged in impermissible retaliation against their political expression. It is clear, however, that Plaintiffs fail to state a plausible claim under the First Amendment. *See O'Handley*, 62 F.4th at 1163 (addressing these theories under the First Amendment and explaining that a retaliation-based theory turns on, among other things, whether the plaintiff alleges facts that plausibly suggest that the defendant "took any adverse action against him"). Accordingly, the Court recommends that the district judge dismiss Plaintiffs' First Amendment claims with prejudice.

The deficiencies identified above apply equally to the claims against the County officials, and it does not appear that there is a good faith for basis for alleging the facts necessary to cure. Accordingly, the district judge should dismiss with prejudice these claims against the County officials as well.

### b.    Count Five

Plaintiffs assert a § 1983 claim against the County. (Compl. at 13-14.) "To state a § 1983 claim against the County, Plaintiffs bear the burden to show that the County's employees or agents acted pursuant to an official custom, pattern, policy, or practice that violates Plaintiffs' rights." *Howe*, 2022 WL 3952395, at *4 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)). As discussed, Plaintiffs fail to plead sufficient facts that amount to a

constitutional violation. Thus, they fail to state a *Monell* claim. *See Howe*, 2022 WL 3952395, at *2 ("[B]ecause Plaintiffs fail to plead sufficient facts that amount to a constitutional violation, they also fail to state a *Monell* claim, and dismissal of the claims against the County was proper."). Accordingly, the Court recommends that the district judge dismiss Plaintiffs' *Monell* claim with prejudice.

### 5.    Respondeat Superior (Counts Six and Nine)

Plaintiffs assert a "respondeat superior" claim against the Secretary's office, which is based on actions Fagan, Scroggin, Whalen, and Roberts allegedly took "in the scope of their employment." (Compl. at 16) (bold and caps omitted). Respondeat superior is a theory of liability and not an independent cause of action. *Henry*, 2012 WL 1021979, at *1. The Court therefore recommends that the district judge dismiss with prejudice Plaintiffs' respondeat superior claim. *See Hamilton v. Las Vegas Metro Police Dep't*, No. 2:21-cv-01746, 2022 WL 1131221, at *2 (D. Nev. Mar. 30, 2022) (observing that the plaintiff's respondeat superior claim failed "as a matter of law" and was appropriate for dismissal with prejudice), *report and recommendation adopted*, 2022 WL 1128601, at *1 (D. Nev. Apr. 15, 2022); *see also OSU Student All. v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012) ("Section 1983 suits . . . do not support vicarious liability."); *Lockett v. Cnty. of L.A.*, 977 F.3d 737, 741 (9th Cir. 2020) (explaining that "*Monell* claims cannot predicate municipal liability for constitutional violations of its offic[ials] under the theory of respondeat superior") (citation omitted).

### 6.    Title VII Claims (Counts Four and Eight)

Plaintiffs assert Title VII claims against the Secretary's office, Fagan, Scroggin, Whalen, Roberts, Hall, and Doll. (Compl. at 13, 15.) Plaintiffs do not allege or argue that they had an employment relationship with the state or County, and the record before the Court reflects that there was no employment relationship between the parties. Furthermore, Title VII does not

impose liability on individual defendants. Accordingly, the Court recommends that the district judge dismiss Plaintiffs' Title VII claims with prejudice. *See Parker v. Youth Policy Inst.*, 675 F. App'x 775, 776 (9th Cir. 2017) (affirming the district court's Rule 12(b)(6) dismissal of the plaintiff's Title VII claims against a school district and policy institute because she "failed to allege facts sufficient to show that she had an employment relationship with [either defendant]"); *Khorshed v. Adams*, 670 F. App'x 588, 589 (9th Cir. 2016) (affirming the dismissal of Title VII claims under Rule 12(b)(6) because Title VII "do[es] not impose liability on individual defendants" (citing *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037-38 (9th Cir. 2006))).[12]

### 7.    Declaratory and Injunctive Relief

The Court recommends that the district judge dismiss Plaintiffs' standalone claims for declaratory and injunctive relief (*see* Compl. at 1, 6, 19) because they fail to allege any plausible claims for relief.

## CONCLUSION

For the reasons stated, the Court recommends that the district judge GRANT Defendants' motion to dismiss (ECF No. 13), and dismiss Plaintiffs' complaint with prejudice.

## SCHEDULING ORDER

The Court will refer its Findings and Recommendation to a district judge. Objections, if any, are due within fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due within fourteen (14) days after being served with a copy of

---

[12] The Court notes that Title I of the Civil Rights Act does "bar[] the unequal application of voter registration requirements." *Celece*, 2020 WL 6802027, at *8 (citation omitted). Plaintiffs, however, do not make any allegations related to voter registration requirements.

the objections. When the response is due or filed, whichever date is earlier, the Findings and

Recommendation will go under advisement.

DATED this 30th day of June, 2023.

HON. STACIE F. BECKERMAN
United States Magistrate Judge